UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LEGAL EAGLE, LLC, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:   20-1732 (RC) |
| | : | |
| v. | : | Re Document Nos.:   7, 13, 21, 27 |
| | : | |
| NATIONAL SECURITY COUNCIL RECORDS ACCESS AND INFORMATION SECURITY MANAGEMENT DIRECTORATE, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE

**I. INTRODUCTION**

In this case brought pursuant to the Freedom of Information Act ("FOIA"), Plaintiff Legal Eagle, LLC ("Legal Eagle"), a business that runs a YouTube channel focused on legal issues, seeks records related to the prepublication review of Former National Security Adviser John Bolton's book *The Room Where It Happened*.  Legal Eagle has filed an Amended Complaint with twenty-one causes of action, all brought under FOIA, related to its various requests for records and requests for expedited processing.  Legal Eagle named as Defendants the National Security Council Records Access and Information Security Management Directorate ("RAISMD"), the Central Intelligence Agency, the Department of Defense, the Department of Justice ("DOJ"), the Department of State, the National Archives and Records Administration, and the Office of the Director of National Intelligence (together "Defendants"). RAISMD has moved to dismiss the counts against it, arguing that under binding D.C. Circuit

precedent, the National Security Council ("NSC"), and any of its subcomponents, are not subject to FOIA. Also before the Court are Legal Eagle's and Defendants' cross motions for partial summary judgment on the counts related to the requests for expedited processing. Additionally, Legal Eagle filed a motion to strike Defendants' cross motion for partial summary judgment, arguing that Defendants failed to adhere to proper motions practice procedure.

For the reasons discussed below, the Court will grant RAISMD's motion to dismiss pursuant to *Armstrong v. Exec. Office of the President*, 90 F.3d 553 (D.C. Cir. 1996). As a subcomponent of the NSC, which is not subject to FOIA, the Court finds that RAISMD is not subject to FOIA. With respect to the motions for partial summary judgment, the Court agrees with Defendants that based on the records before the agencies, the requests for expedited processing were properly denied. Finally, the Court finds nothing procedurally improper with Defendants' cross motion for partial summary judgment, and therefore will deny Legal Eagle's motion to strike.

## II.  BACKGROUND

As alleged in the Amended Complaint, Legal Eagle runs a "YouTube channel focused on legal issues . . . with more than one million subscribers, ten million monthly views, and 100 million total video views." Am. Compl. ¶ 3, ECF No. 5. The channel "features a recurring segment entitled 'Real Law Review,' in which the host explains the legal issues behind major stories in the news . . . for a general audience." *Id.* ¶ 37. The company seeks records related to the prepublication review of a manuscript written by Former National Security Advisor John Bolton. *Id.* ¶ 38.

Any person who possesses a security clearance must sign a Non-Disclosure Agreement that includes an agreement to submit any manuscript related to his or her national security

employment for prepublication review prior to disclosing it to any third party. *Id.* ¶ 15. The review process, generally handled by the agency that sponsored the security clearance, allows the government to deny an author permission to publish both classified and unclassified information depending on the circumstances. *See id.* ¶ 21. In late 2019, RAISMD conducted a prepublication review of Mr. Bolton's book, *The Room Where It Happened*, and determined that it contained classified information. *See id.* ¶¶ 24–36. In June 2020, despite the ongoing prepublication review and determination that the manuscript contained classified information, Mr. Bolton had printed and shipped the book to distributors across the country. *Id.* ¶ 33. This led to the government seeking a temporary restraining order to prevent the book's distribution. *Id.* ¶ 35. Although Judge Lamberth denied the government's motion, he stated that "the Court is persuaded that Defendant Bolton likely jeopardized national security by disclosing classified information in violation of his nondisclosure agreement obligations." *Id.* ¶ 36 (quoting *United States v. Bolton*, 468 F. Supp. 3d 1, 5 (D.D.C. 2020)).

Legal Eagle submitted a series of FOIA requests to Defendants seeking records and information regarding Mr. Bolton's book, the prepublication review process, and the information the government prohibited, or attempted to prohibit, Mr. Bolton from publishing. *See generally* Pl.'s Mot. Partial Summ. J. Ex. A, ECF No. 13-1. Alongside the requests for records, Legal Eagle submitted requests for expedited processing. *See generally id.* The requests for expedited processing explained that Legal Eagle runs a YouTube channel focused on informing the public about legal issues and that the requested information concerned operations or activity of the government. *See id.* In addition, the requests for expedited processing included the following statement:

> [B]ecuase of the issues surrounding [Mr. Bolton's] manuscript and the Government's efforts to prohibit [Mr.] Bolton from providing the requested

3

> information—either in his book or in Congressional testimony—this request satisfies the compelling need standard for expedited processing, since it is made by a person primarily engaged in disseminating information to inform the public about Government activity involving topics of breaking news.

*Id.*[1] Two offices—the DOJ National Security Division and the Office of Legal Counsel ("OLC")—agreed to expedite Legal Eagle's FOIA requests. Pl.'s Mem. of P. & A. Supp. Cross Mot. Partial Summ. J. ("Pl.'s Mem.") at 1–2, ECF No. 13. Five offices denied Legal Eagle's requests to expedite and RAISMD did not decide the matter with respect to three requests. *Id.* at 2. Counts 2, 4, 6, 8, 12, 14, 16, and 18 of the Amended Complaint charge Defendants with improperly denying, or constructively denying in RAISMD's case, Legal Eagle's requests to expedite processing of its FOIA requests. *See* Am. Compl. ¶¶ 50–53, 60–63, 73–76, 87–90, 120–23, 131–34, 141–44, 152–57.

Pending before the Court are several motions. Defendants filed a partial motion to dismiss arguing that RAISMD is not subject to FOIA because the NSC, of which it is a part, is not subject to FOIA under D.C. Circuit precedent. *See* Defs.' Partial Mot. Dismiss, ECF No. 7. Legal Eagle filed a motion for partial summary judgment on the counts related to its requests to expedite processing. *See* Pl.'s Mem. In response, Defendants filed a cross motion for partial summary judgment of their own on the requests to expedite counts. *See* Defs.' Cross Mot. Partial Summ. J. ("Defs.' Partial MSJ"), ECF No. 21. Finally, because Legal Eagle argues that Defendants' cross motion for summary judgment was improperly filed, it filed a motion to strike Defendants' cross motion and the reply in support of that motion. *See* Pl.'s Mot. Strike, ECF No. 27. The pending motions have all been fully briefed and are ripe for decision.

---

[1] The requests for expedited processing submitted to Defendants included identical language, but a few of the requests had minor modifications. *See id.* at 29, 30, 33, 35.

### III.  LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests.  Fed. R. Civ. P. 8(a)(2); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  The complaint's factual allegations are to be taken as true, and the court is to construe them liberally in the plaintiff's favor.  *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).  Notwithstanding this liberal construal, the court deciding a Rule 12 motion must parse the complaint for "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This plausibility requirement means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the litigation.

5

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324. In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence[,]" *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255.

## IV.  ANALYSIS

### A.  Partial Motion to Dismiss

Defendants' partial motion to dismiss relies on the D.C. Circuit's decision in *Armstrong v. Exec. Office of the President*, which concluded that "the NSC is not an agency within the meaning of FOIA." 90 F.3d at 556. Because RAISMD is an office within NSC, Defendants contend that it, like the NSC as a whole, is not subject to FOIA. Defs.' Partial Mot. Dismiss at 1. Legal Eagle maintains that the fact that the NSC as a whole is not an agency subject to FOIA does not resolve the question of whether RAISMD is subject to FOIA. *See* Pl.'s Mem. P. & A. Opp'n Defs.' Partial Mot. Dismiss ("Pl.'s Opp'n") at 2, ECF No. 14. Legal Eagle argues that it has plausibly alleged that RAISMD's function is sufficiently distinct from the NSC as a whole to render the D.C. Circuit's opinion in *Armstrong* inapplicable. *See id.* at 2–3.

FOIA's record disclosure requirements apply to agencies, a term which "includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f)(1). Although this definition explicitly includes the Executive Office of the President, the D.C. Circuit has recognized that the "definition was not [] meant to cover 'the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President.'" *Armstrong*, 90 F.3d at 558 (quoting H.R. Conf. Rep. No. 1380, 93d Cong., 2d Sess. 14 (1974)). The D.C. Circuit has developed a three-factor test to determine the status under FOIA of units within the Executive Office of the President. *See Meyer v. Bush*, 981 F.2d 1288, 1293 (D.C. Cir. 1993). The factors to be weighed are: (1) "how close operationally the group is to the President," (2) "whether it has a self-contained structure," and (3) "the nature of its delegate[ed]" authority. *Id.*

In *Armstrong*, the D.C. Circuit analyzed these factors to determine whether the NSC is an agency subject to FOIA. *See* 90 F.3d at 558–65. The court first "conclude[d] that the NSC has a structure sufficiently self-contained that the entity could exercise substantial independent authority." *Id.* at 560. Second, the court found that the NSC's "intimate organizational and operating relationship" with the President is "entitled to significantly greater weight in evaluating the NSC's arguable status as an agency than [] the self-contained structure of the entity." *Id.* The court noted that the "President chairs the statutory Council, and his National Security Adviser, working in close contact with and under the direct supervision of the President, controls the NSC staff." *Id.* The court then turned to the statutory and presidential delegations of authority to the NSC, the third factor described in *Meyer*. *See id.* at 560–65. Most importantly

7

for this case, the court considered the NSC's delegated authority to protect national security information.  *See id.* at 561–62.  The NSC had argued that it "merely monitors other agencies in order to assure that the objectives of the President, who retains ultimate authority over classified information, are achieved."  *Id.* at 562.  The NSC explained that declassification reviews "are really nothing more than the internal management of the information that the NSC generates in advising the President."  *Id.*  Despite Armstrong's arguments that the NSC had an independent and discretionary role in declassification review for entities outside the NSC, the court did not consider this evidence "the indicium of an entity with substantial independence from the President."  *Id.*  The court concluded "that under the three-part test of *Meyer*, the NSC is not an agency subject to the FOIA."  *Id.* at 565.

  Defendants argue that *Armstrong* resolves this case.  *See* Defs.' Partial Mot. Dismiss at 6–7.  They argue that a federal entity must be treated like its parent entity and that RAISMD "is not even appropriately named as a defendant, as under FOIA, the parent agency constitutes the proper defendant."  *Id.* at 8 n.4 (citing *Vasquez v. U.S. Dep't of Justice*, 764 F. Supp. 2d 117, 119 (D.D.C. 2011)).  Defendants argue that "an entity (NSC) that itself lacks substantial independent authority, and exists only to advise and assist the President, cannot have a subordinate sub-part (NSC-RAISMD) that operates independently."  *Id.* at 8.  They point to *Ryan v. Department of Justice* where the D.C. Circuit stated that "depending on its general nature and functions, a particular unit is either an agency or it is not.  Once a unit is found to be an agency, this determination will not vary according to its specific function."  *Id.* at 9 (quoting *Ryan v. Dep't of Justice*, 617 F.2d 781, 788 (D.C. Cir. 1980)).  Defendants further argue that even if the Court did examine the functions of RAISMD separately, Legal Eagle has failed to plead sufficient facts to

8

demonstrate that it should be considered, in the face of *Armstrong*, an agency subject to FOIA. *See id.* at 10–12.

Legal Eagle suggests that pointing to *Armstrong* is a straw man argument and that just because no court has determined that a sub-part of a non-FOIA entity is subject to FOIA does not mean that this Court should not make such a determination. Pl.'s Opp'n at 2–4. Legal Eagle claims, without citation to any cases in this district postdating *Armstrong*, that "[e]ach time a court has adjudicated a FOIA case against the NSC, it has performed a searching 'sole function' examination of the functions of the office" and that this "fact removes any relevance of the case law cited" by Defendants. *Id.* at 4. As an example, Legal Eagle points to an out of circuit case in which the Second Circuit, after analyzing the functions of the NSC and its subcomponents, determined that the NSC was not subject to FOIA, just like the D.C. Circuit did in *Armstrong*. *Id.* at 5 (citing *Main Street Legal Services v. National Security Council*, 811 F.3d 542 (2d Cir. 2016)). It is Legal Eagle's position that *Armstrong* and *Main Street* only determined that the NSC as a whole is not subject to FOIA but left open the possibility that subcomponents of the NSC might still be subject to FOIA if they are sufficiently independent. *See id.* at 5–6.

The Court agrees with Defendants. "[T]he law in this Circuit is clear that the NSC is not an 'agency' for purposes of the FOIA." *Risenhoover v. U.S. Dep't of State*, No. 19-cv-715, 2020 WL 3128947, at *7 (D.D.C. June 12, 2020) (citing *Armstrong*, 90 F.3d at 559)); *see also Citizens for Responsibility and Ethics in Wash. v. Off. of Admin.*, 566 F.3d 219, 223 (D.C. Cir. 2009) ("Nor is the National Security Council . . . covered by FOIA because it plays no 'substantive role apart from that of the President, as opposed to a coordinating role on behalf of the President.'" (quoting *Armstrong*, 90 F.3d at 565)); *Electr. Privacy Info. Ctr. v. Nat'l Sec. Agency*, 795 F. Supp. 2d 85, 91 (D.D.C. 2011) ("This Circuit has unambiguously held that the NSC is not an

9

agency subject to FOIA."); *Property of the People, Inc. v. Off. of Mgmt. and Budget*, 394 F. Supp. 3d 39, 44 (D.D.C. 2019) ("NSC and its subcommittees exercise no 'meaningful non-advisory authority.'" (quoting *Armstrong*, 90 F.3d at 565)). The Court perceives no invitation in this Circuit's binding precedent to reevaluate whether subcomponents of the NSC, an entity that itself has been found to not "exercise *any* significant non-advisory function," *Armstrong*, 90 F.3d at 565 (emphasis added), are agencies subject to FOIA. Although *Armstrong* did not specifically discuss prepublication review or RAISMD, the court did consider the NSC's role in protecting classified information. *See id.* at 561–62; *see also Main Street*, 811 F.3d at 553 (concluding after analyzing functions of NSC that it "is not an agency subject to the FOIA because its sole statutory function is to advise and assist the President").[2] Where two Circuit courts have determined that the NSC as a whole functions in solely an advisory capacity, "[a]ny duties the NSC assigns to its staff . . . must also be deemed only to advise" because the NSC "can hardly confer on its staff more authority than it has itself." *Main Street*, 811 F.3d at 554. Given the D.C. Circuit's consideration of the functions of the NSC and its determination that it is not

---

[2] Legal Eagle's attempts to evade the key holdings in *Armstrong* and *Main Street*, by claiming that both cases leave open the possibility that entities within a non-FOIA entity may be subject to FOIA, *see* Pl.'s Opp'n at 5–6, are not rooted in the text or analysis of either decision. In both cases, the courts considered the various functions of the NSC and determined that it did not exercise any significant non-advisory functions. *See Armstrong*, 90 F.3d at 565; *Main Street*, 811 F.3d at 553; *see also* Defs.' Reply in Supp. of their Partial Mot. Summ. J. at 3–4, ECF No. 18 ("The [] conclusion that these cases only determined the FOIA status of the NSC, not its sub-units, strips the word 'sole' out of 'sole function'—that is, a sub-unit of an entity whose *sole* function is to advise and assist the President cannot, by definition, be substantially independent from the President.").

subject to FOIA,[3] the Court declines to reconsider the matter.[4] Accordingly, counts 1–4, 15, and 16 and Defendant RAISMD are dismissed.

## B. Motions for Partial Summary Judgment

The parties have both moved for partial summary judgment on the counts that charge Defendants with improperly denying Legal Eagle's requests for expedited processing of its FOIA requests. FOIA allows for "expedited processing" of record requests where "the person requesting the records demonstrates a compelling need" and "in other cases determined by the agency."[5] 5 U.S.C. § 552(a)(6)(E)(i). "Compelling need" means "that a failure to obtain requested records on an expedited basis . . . could reasonably be expected to pose an imminent threat to the life or physical safety of an individual" or "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(v). The requester bears the

---

[3] Even if the Court did conduct an analysis to determine separately if RAISMD should be considered an agency under FOIA, which it need not do, Legal Eagle has not plausibly alleged any facts that would change the D.C. Circuit's analysis, which, again, included consideration of the NSC's role in protecting classified information. *See Armstrong*, 90 F.3d at 561–62. Legal Eagle simply alleges that RAISMD "bears primary responsibility for the classification review of written works submitted to the NSC for the prepublication review process." Am. Compl. ¶ 4. This allegation is followed by the conclusory statement that "RAISMD is accordingly an agency . . . with substantial independent authority in the exercise of specific functions whose sole function is not to advise and assist the President." *Id.* Without any additional factual allegations speaking to the independence of RAISMD or the nature of its delegated authority, Legal Eagle fails to allege a plausible claim. Legal Eagle's notice of supplemental authority, which references a court filing that describes the prepublication review process of Mr. Bolton's manuscript, adds little to the factual allegation in the Amended Complaint and does not change the Court's conclusion either. *See* Pl.'s Notice of Supp. Auth., ECF No. 23.

[4] Therefore, the Court will not permit Legal Eagle an opportunity to conduct limited discovery on this matter.

[5] The statute "gives an agency latitude to expand the criteria for expedited access beyond cases of 'compelling need.'" *Al-Fayed v. C.I.A.*, 254 F.3d 300, 307 n.7 (D.C. Cir. 2001). An agency's reasonable interpretation of its own regulations is entitled to judicial deference. *See id.*

11

burden of showing that he or she is entitled to expedited processing. *Al-Fayed v. C.I.A.*, 254 F.3d 300, 305 n.4 (D.C. Cir. 2001). Agency decisions on requests for expedited processing are subject to judicial review "based on the record before the agency at the time of the determination." 5 U.S.C. § 552(a)(6)(E)(iii). Such decisions are reviewed *de novo*.[6] *See Al-Fayed*, 254 F.3d at 307–08.

The parties' disagreement centers on whether Legal Eagle established an "urgency to inform the public" about the government activity at issue. *See* Defs.' Partial MSJ at 11–12 (not contesting that Legal Eagle is "primarily engaged in disseminating information" or that the requests concerned "actual or alleged Federal Government activity"). When evaluating this statutory requirement, courts must consider three factors: "(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Al-Fayed*, 254 F.3d at 310. The requester must develop the record to demonstrate an urgency to inform the public. *See id.* at 310–11; *see also Progress v. Consumer Fin. Prot. Bureau*, No. 17-cv-686, 2017 WL 1750263, at *5 (D.D.C. May 4, 2017); *Wadelton v. Dep't of State*, 941 F. Supp. 2d 120, 122 (D.D.C. 2013) ("The requestor bears the burden of proof.").

---

[6] Because the Court conducts a *de novo* review of the record before the agency, Legal Eagle's argument that the denials fail to demonstrate reasoned decisionmaking does not affect the Court's conclusion. *See* Pl.'s Mot. Partial Summ. J. at 9–13. Legal Eagle points to a decision in which Judge Jackson found that an agency's denial of a request to expedite under its own regulation was "entitled to little deference." *Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*, 436 F. Supp. 3d 354, 361 (D.D.C. 2020). There, unlike here, the court did not conduct a *de novo* review of the record before the agency for denials made under the statutory framework. *See id.* at 359–61.

As noted above, Legal Eagle's requests for expedited processing submitted to each of the Defendants included the following statement speaking to a "compelling need":

> [B]ecuase of the issues surrounding [Mr. Bolton's] manuscript and the Government's efforts to prohibit [Mr.] Bolton from providing the requested information—either in his book or in Congressional testimony—this request satisfies the compelling need standard for expedited processing, since it is made by a person primarily engaged in disseminating information to inform the public about Government activity involving topics of breaking news.

Pl.'s Mot. Partial Summ. J. Ex. A. Without focusing on the content of the record before the agency, Legal Eagle argues that "records about a prepublication review process applied to a highly popular and controversial tell-all book . . . concern a matter of 'current exigency to the American public." Pl.'s Mem. at 8 (footnoted omitted). Although not mentioned in its requests for expedited processing, Legal Eagle states that "it is highly relevant that [Mr.] Bolton has levied several accusations at the White House of misconduct in the prepublication review process" and that information related to these allegations "would clearly be 'central to a pressing issue of the day,' in the run-up to a Presidential election." *Id.* (quoting *Wadelton*, 941 F. Supp. 2d at 123). Defendants counter that besides the statement noted above in the requests, Legal Eagle "provided no further information, or any explanation of why the information was time sensitive—nothing at all—to support a finding of urgency to inform the public on the topic." Defs.' Partial MSJ at 13. In an apparent concession regarding the inadequacy of the record before the agency, Legal Eagle argues in reply that Defendants should not have ignored "commonly-known information" when evaluating the requests for expedited processing. Pl.'s Reply Supp. Mot. Partial Summ. J. ("Pl.'s Reply") at 4, ECF No. 25. Legal Eagle contends that "[t]here is no requirement that requesters must spell out in exacting detail why something is important when any person with even a casual awareness of current events would automatically know that it is important." *Id.* at 3–4.

13

The Court again agrees with Defendants; the record before the agencies fails to establish a compelling need for expedited processing.[7] Congress has made clear that judicial review of agency denials of requests for expedited processing must be "based on the record before the agency at the time of the determination," 5 U.S.C. § 552(a)(6)(E)(iii), not on "commonly-known information" that the agency should have considered in addition to the record. Legal Eagle's requests offered no evidence of an urgency to inform the public that would justify placing its requests ahead of others. Courts often affirm denials of requests to expedite on comparatively more robust records. *See Al-Fayed*, 254 F.3d at 311 ("[T]he record does not contain any news report on the subject . . . other than reports on the press conference plaintiffs held to announce the filing of their complaint . . . Such evidence is insufficient to demonstrate that the request concerns a matter of current exigency."); *Progress*, 2017 WL 1750263, at *5 ("[T]he Court in no way concludes that there is not in reality substantial public interest . . . Rather, the Court merely finds that the current record, which it was Plaintiff's burden to develop, does not provide any evidence of this public interest."); *Wadelton*, 941 F. Supp. 2d at 124 ("Plaintiffs' submission of one article, a series of posts on a specialized blog, and plaintiff Truthout's representation that it 'intends' to publish a story do not come close to demonstrating a comparable level of media interest."); *but see Am. Civil Liberties Union of N. California v. U.S. Dep't of Def.*, No. C 06-01698, 2006 WL 1469418, at *7 (N.D. Cal. May 25, 2006) (finding that numerous "articles in the record also suggest that there was an urgency"); *Gerstein v. C.I.A.*, No. C 06-4643, 2006 WL 3462658, at *4–5 (finding record containing recent statements from high profile officials, reports

---

[7] Legal Eagle's notice of new evidence regarding the Department of Defense's decision to deny its request for expedited processing does not alter the Court's *de novo* analysis because it does not change the record before the agency at the time of the determination. *See* Pl.'s Notice of New Evid., ECF No. 30.

14

of complaints from members of Congress, and database search showing "977 news reports in the previous 90 days" sufficiently demonstrated a compelling need). Because Legal Eagle failed to offer evidence demonstrating a "compelling need," the Court finds that Defendants properly denied the requests for expedited processing based on the records before the agencies at the time of the determinations.[8] Accordingly, the Court grants Defendants' motion for summary judgment on counts 6, 8, 12, 14, and 18.[9]

### C. Motion to Strike

Finally, Legal Eagle filed a motion to strike Defendants' Partial Motion for Summary Judgment because it characterizes the cross motion as an inappropriate "cross-cross-motion." Pl.'s Mot. Strike at 1. Legal Eagle takes issue with the fact that Defendants had already filed a dispositive motion (the partial motion to dismiss) and argues that Defendants should have filed for partial summary judgment on the counts involving the requests for expediting processing when they filed their first dispositive motion. *Id.* at 2–3. Legal Eagle further contends that because it never filed an opposition to Defendants cross motion for summary judgment (instead styling its submission as merely a reply brief), Defendants' reply brief should be struck from the record under Local Rule 7(d). *Id.* at 3.

As Defendants correctly point out in opposition, "Rule 56 allows a party to move for summary judgment 'at any time until 30 days after the close of discovery,' regardless of whether they have first filed a motion to dismiss on other issues." Defs.' Opp'n Pl.'s Mot. Strike at 2,

---

[8] The Court does not agree that OLC's decision to grant Legal Eagle's request for expedited processing should bear on the independent decisions of other agencies. *See* Pl.'s Mot. Partial Summ. J. at 4–5. Legal Eagle has pointed to no authority suggesting that OLC's decision should be treated as an official OLC opinion that is binding on the Executive Branch and this Court can think of no reason to treat it as such.

[9] The Court does not grant summary judgment on the counts that it has already dismissed that involve the NSC and RAISMD.

15

ECF No. 28 (quoting Fed. R. Civ. P. 56(b)).  Beyond Legal Eagle's contentions that the motion is an inappropriate "cross-cross-motion" and that it never filed an opposition so the local rules prohibit a reply,[10] it cites no legal precedent or rule supporting its argument that the motion and reply should be struck from the record.  Even the Court acknowledged that Defendants would file a "combined cross-motion for partial summary judgment and opposition to Plaintiff's motion for partial summary judgment" in an order granting an extension of time to file.  *See* Min. Order (Sep. 8, 2020).  "[A] district court enjoys broad discretion in managing its docket." *Grimes v. District of Columbia*, 794 F.3d 83, 90 (D.C. Cir. 2015).  The Court will not use that discretion in this case to strike Defendants' motion and reply from the record.

* * *

To summarize, based on the Court's discussion above, counts 1–4, 15, and 16 and Defendant RAISMD are dismissed.  Partial summary judgment is granted in Defendants' favor on counts 6, 8, 12, 14, and 18.  Therefore, counts 5, 7, 9–11, 13, 17, and 19–21 remain.  Pursuant to the Court's previous order, *see* Min. Order (Sep. 3, 2020), the stay on Defendants' time to respond to the Amended Complaint is lifted; Defendants shall have fourteen days to respond to the Amended Complaint.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss (ECF No. 7) is **GRANTED**.  Plaintiff's Motion for Partial Summary Judgment (ECF No. 13) is **DENIED** and Defendants' Motion for Partial Summary Judgment (ECF No. 21) is **GRANTED**.  Plaintiff's

---

[10] Defendants argued in opposition that if the Court does not treat Legal Eagle's filing as an opposition to its cross motion, it should deem to motion conceded.  Defs.' Opp'n Pl.'s Mot. Strike at 2–3.  Legal Eagle is correct that motions for summary judgment cannot be conceded, *see* Pl.'s Reply Supp. Mot. Strike at 2, ECF No. 29, but the Court will not strike Defendants' motion and reply based on Defendants' incorrect assertion.

Motion to Strike (ECF No. 27) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 18, 2021                                         RUDOLPH CONTRERAS
                                                               United States District Judge