## UNITED STATES COURT OF APPEALS
## DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| LEGAL EAGLE, LLC, | * |
| | * |
| Appellant, | * |
| | * |
| v. | * |
| | * |
| NATIONAL SECURITY COUNCIL | *   Case No. 24-5230 |
| RECORDS ACCESS AND | * |
| INFORMATION SECURITY | * |
| MANAGEMENT DIRECTORATE, | * |
| | * |
| Appellee. | * |
| | * |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## APPELLANT'S OPPOSITION TO APPELLEE'S
## MOTION FOR SUMMARY AFFIRMANCE

Appellant Legal Eagle, LLC ("Legal Eagle") brought this case pursuant to the Freedom of Information Act ("FOIA") against Appellee National Security Council ("NSC") Records Access and Information Security Management Directorate ("RAISMD") after RAISMD refused to process several of Legal Eagle's FOIA requests. Judge Rudolph Contreras ("the District Court") granted RAISMD's Partial Motion to Dismiss on 18 March 2021. Stein requested and was denied certification of the issue for interlocutory appeal and then ultimately noticed an appeal upon the final conclusion of the case below on 4 October 2024, and RAISMD moved for summary affirmance on 9 December 2024.

This Court should not summarily affirm the District Court's decision because "the position of [neither] party is so clearly correct as a matter of law that no substantial question regarding the outcome of the appeal exists." *See Joshua v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994). Moreover, this case involves at least one nuanced technical question which has not previously been resolved by this or any other court, rendering it inappropriate for summary disposition. *See Collins v. James*, No. 04-5428, 2005 U.S. App. LEXIS 6544 at *2 (D.C. Cir. Apr. 14, 2005) ("Parties should avoid requesting summary disposition of issues of first impression for the Court.") (quoting *D.C. Cir. Handbook of Practice & Internal Procedures* at 36 (2002)) (*per curiam*); *see also Cascade Broad. Group, Ltd. v. FCC*, 822 F.2d 1172, 1174 (D.C. Cir. 1987) (summary disposition appropriate "only where the moving party has carried the heavy burden of demonstrating that the record and the motion papers comprise a basis adequate to allow the fullest consideration necessary to a just determination") (internal quotations and citations omitted). In short, this Motion is a waste of the Court's resources and should be soundly rejected. *See United States v. Fortner*, 455 F.3d 752, 754 (7th Cir. 2006) (denying government motion for summary affirmance and chastising the government for "wast[ing] the resources of [the] court").

## ARGUMENT

This case hinges on two main questions: (1) Is the fact that the NSC as a whole is not an agency subject to FOIA determinative; and (2) Is RAISMD's sole function to advise and assist the President? The answer to the former question is decidedly no, but Legal Eagle concedes that the answer to the latter question could conceivably be yes. However, based on the record before the Court, it is not possible to state that Legal Eagle's claims are *implausible* simply because they may turn out to be without merit once evidence is adduced. The Court should accordingly deny RAISMD's motion and allow the case to proceed directly to merits briefing on an expedited schedule as requested by Legal Eagle.

## I.     THE NSC'S NON-AGENCY STATUS IS NOT DETERMINATIVE

RAISMD spends a sizeable portion of its Motion arguing that the NSC is clearly not an agency subject to FOIA, which Legal Eagle has explicitly stated it is not disputing. 1st Am. Compl., Dkt. #5, ¶ 47 (filed July 16, 2020) [hereinafter FAC]. RAISMD even states that "Plaintiff does not dispute that the NSC is not an agency subject to FOIA." (Appellees' Mot. Summ. Aff., Dkt. #2088751, at 7 (filed Dec. 9, 2024) [hereinafter RAISMD's Mot.]) It then proceeds to re-argue that question, which the Court should not indulge; any time spent evaluating whether the NSC as a whole is subject to FOIA is time wasted on a matter which is neither a case nor a controversy.

The purpose behind this straw man argument is, of course, to lead the Court down a primrose path and then spring the actual argument on it: "The text, analysis, logic, and context of the Court's decision in *Armstrong* [*v. Exec. Ofc. of the Pres.*, 90 F.3d 553 (D.C. Cir. 1996),] all demonstrate that the Court's holding that the NSC is not subject to FOIA necessarily applies to all of the staff and sub-offices within the NSC." (RAISMD's Mot. at 9.) This argument is completely meritless, as was the prime example offered by RAISMD in its defense below: "Plaintiff's argument would be akin to arguing that this Court is not an agency subject to FOIA, but the Office of the Clerk of Court may be if it exercises 'substantial independent authority.' This, of course, is nonsense." Defs.' Mem. of Law Supp. Defs.' Part. Mot. Dismiss, Dkt. #9-1, at 8 (filed Aug. 3, 2020) [hereinafter RAISMD's Dist. Mem.]. As the Court—and no doubt RAISMD—is aware, FOIA only applies to the Executive Branch. No amount of independent authority would make *any* office located in the Judicial Branch—or the Legislative Branch, for that matter—an "agency."

RAISMD's argument hinges on a common fallacy: the fact that no court has issued a comparable holding before means that it is not valid. "We are aware of no instance where an office or sub-part within a non-FOIA entity has been treated as an agency subject to FOIA." *Id.* at 7-8. The simple fact is, there are only a negligible number of "non-FOIA entities" in the Executive Branch, and so the

likelihood of a court being presented with this question and then finding that an office or sub-part within a non-FOIA entity is subject to FOIA is statistically improbable, to say the least, given how fact-specific the inquiry must be. All but one of the "non-FOIA entities" in the Executive Branch of which the undersigned is aware exist within the Executive Office of the President ("EOP"), and most of them exist within the White House Office.[1] Components of the White House Office have so far been held to be universally excluded from FOIA due to their close proximity to the President and lack of anything close to independent authority. *Meyer v. Bush*, 981 F.2d 1288, 1293 & n.3 (D.C. Cir. 1993) (treating all White House Office staffers as the President's "immediate personal staff").

The primary difference between the NSC and the White House Office—and therefore the inapposite nature of most of RAISMD's citations—can be best demonstrated by answering one question: Did the court analyze the functions of the offices in question? In *Meyer*, the D.C. Circuit explained that the President's "immediate personal staff" are exempted from FOIA "without a careful examination of [their] function." *Id.* at 1293 (internal quotation marks omitted); *see also id.* at 1310 ("We and the Supreme Court have . . . granted FOIA exemptions to persons or offices within the White House Office without applying the 'sole

---

[1] The exception to this general rule is the First Responder Network Authority, a Department of Commerce component which has been held to be exempt from FOIA. *Whitaker v. Dep't of Commerce*, 970 F.3d 200, at 206 (2d Cir. 2020).

function' test.") (Wald, J., dissenting). "In other words, entities within the White House Office are not agencies subject to FOIA regardless of how they function. The D.C. Circuit has repeatedly interpreted *Kissinger* to mean that entities within the White House Office are *categorically* not agencies for purposes of FOIA." *Democracy Forward Found. v. White House Ofc. of Am. Innovation*, 356 F. Supp. 3d 61, 66 (D.D.C. 2019) (emphasis added). Simply put, these cases stand for the proposition that, if every component of an entity is so *categorically* not subject to FOIA that a court does not even need to *consider* its functions, then a court can dismiss any FOIA claim against that component.

The NSC, however, is not so categorically not subject to FOIA that a court can dismiss a claim against its components "without applying the 'sole function' test." *Meyer*, 981 F.2d at 1310 (Wald, J., dissenting). Each time a court has adjudicated a FOIA case against the NSC, it has performed a searching "sole function" examination of the functions of the office. This inescapable fact removes any relevance of the case law cited by RAISMD. Instead, it is necessary to view the NSC cases in the proper context and assess the questions before the court in those cases. The Court need only examine the most recent case, *Main Street Legal Services v. National Security Council*, to understand this point.

In *Main Street Legal Services*, much like all the cases which came before, the plaintiff sought a holding that the *entire* NSC was an agency subject to FOIA

because *parts of it* exercised independent authority. *See* 811 F.3d 542 *passim* (2d Cir. 2016). As a result, the court's examination effectively boiled down to whether or not the NSC *as a whole* was subject to FOIA, and it concluded it was not, *notwithstanding* any apparent authority that a few components might exercise.[2] In effect, the court implicitly held that a few independent actions did not outweigh the overall fact that the NSC's sole function *in its entirety* was to advise the President. This is a legally distinct question from the instant case. Legal Eagle is not arguing that the NSC as a whole is subject to FOIA, and it would be inappropriate for the Court to engage in some sort of balancing test between RAISMD's independent authority and the solely advisory nature of the remainder of the NSC. Instead, the Court should consider if Legal Eagle has plausibly alleged that the majority—or entirety—of *RAISMD's* activities shows "whether an entity does more than render advice or assistance to the President—whether it exercises authority independent of the President, particularly with respect to individuals or other parts of government." *Main St. Legal Servs.*, 811 F.3d at 554.

---

[2] On this point, RAISMD mischaracterizes the *Armstrong* ruling as "*Armstrong . . .* necessarily concluded that none of the NSC's offices or staff were subject to FOIA." (RAISMD's Mot. at 13.) This Court did not rule that no part of NSC was an agency; it ruled that *the NSC* was not an agency notwithstanding what some of its parts might do, as the Second Circuit did in *Main Street Legal Services*. Moreover, to the extent that either Circuit held that the specific authorities cited by the plaintiffs were not independent, neither opinion mentioned RAISMD or prepublication review. This will be discussed in greater detail below.

*Armstrong* properly frames the question the Court should ask: "Insofar as the staff has been delegated authority to make policy recommendations for approval by the President, his NSA, or the statutory Council, the staff's functions are, of course, quintessentially advisory." 90 F.3d at 561. Put another way, the actions of an office are only quintessentially advisory to the extent that they constitute policy recommendations for approval by the President, his National Security Advisor, or the statutory Council. If, in contrast, an office exists inside the NSC which plays no role in making policy recommendations and which "exercises authority independent of the President, particularly with respect to individuals," *Main St. Legal Servs.*, 811 F.3d at 554, then it cannot be considered to be merely supporting the NSC in its advisory capacity, and the White House cannot exempt it from FOIA simply by placing it inside the NSC instead of making it a separate office. All evidence in the record suggests that RAISMD exercises the authority of a separate, non-NSC component, and it would be inappropriate for the Court to hold that its mere placement in the EOP organizational chart made it exempt from FOIA.

Relatedly, *Armstrong* suffers from one additional major infirmity which should preclude this Court from blindly following it as controlling precedent: as noted above, the *Armstrong* Court was never presented with information about RAISMD or prepublication review. Even assuming *arguendo* that the Court *did*

intend to declare that the entirety of NSC existed solely to provide advice to the President, that declaration cannot reasonably be read to include sub-offices about which the Court had no knowledge. RAISMD *infers* that the Court intended to cover RAISMD when it was discussing "'the internal management of the information that the NSC generates in advising the President' and 'declassification reviews,'" (RAISMD's Mot. at 11), but never offered this Court or the District Court any evidence that the NSC *even performed* its own prepublication review in 1996 or that an office like RAISMD was even *in existence* at the time to do so. Given the decentralized nature of prepublication review in the Executive Branch, it is equally likely that the creation of an internal NSC capacity for performing prepublication review post-dated *Armstrong*, and even if RAISMD was in existence at the time, there is no reason to believe that it exercised its current authorities. If the District Court had drawn these reasonable inferences in Legal Eagle's favor as it was required to do, it could not have reasonably concluded that Legal Eagle's allegations were implausible based on *Armstrong*.

Therefore, much in the way that new evidence serves as an exception to the general rule governing the scope of a mandate, *see In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (finding reconsideration of an appellate determination appropriate if there is a dramatic change in law, significant new evidence, or blatant error that would result in

serious injustice); *Invention Submission Corp. v. Dudas*, 413 F.3d 411, 414-15 (4th Cir. 2005) (same); *United States v. Bell*, 988 F.2d 247, 251 (1st Cir. 1993) (same), so here does the existence of significant new evidence diminish the controlling authority of *Armstrong*. Simply put, this Court cannot presume that the *Armstrong* Court intended for its ruling to apply to NSC sub-offices about which it knew or suspected nothing and which may not have even existed at the time. It is not difficult to imagine the mischief that such a decision would invite, if the White House is effectively told that it can remove *any office* from the scope of FOIA simply by placing it inside the NSC, regardless of the office's function or authority.

RAISMD's entire line of argument can be traced to a fundamental misunderstanding of the D.C. Circuit's decision in *Ryan v. Department of Justice*, which it expressed thusly below:

> *Ryan* held that under FOIA, "depending on its general nature and functions, a particular unit *is either an agency or it is not*. Once a unit is found to be an agency, this determination *will not vary according to its specific function*." *Ryan*, 617 F.2d at 788 (emphasis added). Like DOJ in *Ryan*, NSC as a whole "is either an agency or it is not." *Id.*

RAISMD's Dist. Mem. at 9 (quoting 617 F.2d 781, 788 (D.C. Cir. 1980)). There are three main issues with this reading of *Ryan*, though.

First. RAISMD conveniently terminated the first quoted sentence before its actual end in a very misleading way, obscuring its actual meaning. *Ryan* held,

"Once a unit is found to be an agency, this determination will not vary according to its specific function *in each individual case*." 617 F.2d at 788 (emphasis added). The argument before this Court was whether records created by the Attorney General while performing one function—recommending judicial nominees to the President—could be considered "not agency records" even when the records he created while performing other functions would be considered agency records. *See*, *e.g.*, *id.* ("Neither Soucie v. David, nor the Committee Report implies that once a unit has been found to be an agency, one of its component parts can nevertheless be treated as a non-agency when engaged in presidential advisory functions."). This Court reasoned that agency status depended on the characteristics of *the agency*, not the characteristics of *any particular record*. That is not in controversy in this case. Furthermore, *Ryan* was first and foremost an opinion about whether particular records were "agency records," not whether the Attorney General was *an agency*. The Department of Justice ("DOJ") never argued that the Attorney General *was never an agency*; it only argued that the records created by the Attorney General were not agency records if he created them for a specific purpose. That is the meaning of the statement that a particular office "is either an agency or it is not," *id.*; its agency status does not change depending on the records being requested.

This context renders RAISMD's argument that "[l]ike DOJ in *Ryan*, NSC as a whole 'is either an agency or it is not,'" RAISMD's Dist. Mem. at 9, completely meaningless. In *Ryan*, this Court was not confronted with allegations that a component of an otherwise exempt entity should be considered an agency under FOIA *all the time*, or even that a component of an agency subject to FOIA should be considered *exempt* all the time. In fact, under RAISMD's reading, the aforementioned *Whitaker v. Department of Commerce*—in which the Second Circuit held that the First Responder Network Authority was not subject to FOIA even though its parent agency was, 970 F.3d at 206—was wrongly decided. If the President signs an Executive Order placing a new office within the NSC, the sole function of which is to make criminal referrals of Executive Branch personnel for suspected leaks to the Attorney General without any input from the NSC or the President, that office would or would not be an agency subject to FOIA regardless of its location within the NSC. So too for RAISMD; whether it is an agency or not depends solely on whether *it* "exercises authority independent of the President, particularly with respect to individuals," *Main St. Legal Servs.*, 811 F.3d at 554, not where it happens to be located.

## II. LEGAL EAGLE PLAUSIBLY ALLEGED THAT RAISMD IS AN AGENCY

*Meyer* stated a three-part test for agency status, but this Court has since distilled that down to one basic question: "However the test has been stated,

common to every case in which we have held that an EOP unit is subject to FOIA has been a finding that the entity in question 'wielded substantial authority independently of the President.'" *Citizens for Resp. & Ethics in Wash. v. Ofc. of Admin.*, 566 F.3d 219, 222 (D.C. Cir. 2009) [hereinafter *CREW II*] (quoting *Sweetland v. Walters*, 60 F.3d 852, 854 (D.C. Cir. 1995) (per curiam)). Legal Eagle has plausibly alleged—which is all he is required to have done in his Complaint—that RAISMD wields substantial authority independently of the President.

As an initial matter, it is important to dispose of one of RAISMD's arguments which attempts to reinvigorate *Meyer* at the expense of *CREW II*. RAISMD leans heavily on *Meyer*'s formulation of the three-part test, placing particular weight on its purported operational closeness to the President. (RAISMD's Mot. at 6.) However, courts have generally foregone any reliance on operational proximity since *CREW II*. *See*, *e.g.*, *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 315 (D.D.C. 2017) ("The most important consideration appears to be whether the 'entity in question wielded substantial authority independently of the President.'") (quoting *CREW II*); *Democracy Forward Found.*, 356 F. Supp. 3d at 67 ("Accordingly, in determining whether or not the OAI is an agency for purpose of FOIA, the Court's analysis will focus on whether or not the OAI 'wielded substantial authority independently of the President.'") (same). Accordingly,

following Judge Kollar-Kotelly's lead, Legal Eagle will address this criterion alone.[3]

As an initial matter, the Court should closely consider the implications of what RAISMD is arguing in this case. Legal Eagle included direct quotes from *the Government's own complaint against Bolton* to support its allegation that RAISMD exercises independent authority, and RAISMD attempted to downplay the meaning of its own arguments by suggesting that "bear[ing] primary responsibility for the classification review of written works submitted to the NSC for the prepublication review process," RAISMD's Dist. Mem. at 10 (quoting FAC ¶ 4), means something less than it appears. "Primary responsibility for the classification review of written works" is not "responsibility, subject to the approval of other officials, to make recommendations to the President regarding the classification review of written works." DOJ lawyers chose those words specifically for a high-profile court filing, and the Court should presume that they carry the ordinary meaning absent solid evidence to the contrary.

---

[3] To the extent that the Court is inclined to evaluate RAISMD's operational proximity to the President, there is no evidence in the record which supports such an allegation, and all reasonable inferences must be drawn in the non-movant's favor. *Harris v. Ladner*, 127 F.3d 1121, 1123 (D.C. Cir. 1997). RAISMD's entire support for this claim was the unadorned statement that "as a part of the NSC, it is operationally close to the President." RAISMD's Dist. Mem. at 10. There is no reason to believe that the President or his direct advisors have any regular interactions with any RAISMD personnel.

Moreover, it is important to note that RAISMD's role is *not* advisory. RAISMD regularly issues decisions *on its own authority* prohibiting private individuals[4] from publishing written works, and an individual who defies such a decision is subject to litigation based *solely* on RAISMD's determination. This is inherently "exercis[ing] authority independent of the President, particularly with respect to individuals." *Main St. Legal Servs.*, 811 F.3d at 554. Put another way, this presents the opposite situation as the case in *Meyer*, in which the Circuit held that while President Reagan's Task Force on Regulatory Relief reviewed proposed rules and regulations, it could not itself direct others to take action. 981 F.2d at 1294. Here, RAISMD does not merely review proposed manuscripts, it also affirmatively directs others not to publish any information to which it objects upon penalty of litigation.

Additionally, as Legal Eagle noted in its Amended Complaint, this responsibility is common to virtually every intelligence agency:

> Each agency generally has a specific office responsible for conducting prepublication review, although prepublication review is often not the sole responsibility of such an office.

---

[4] Current *and former* NSC employees and contractors—as well as an unknown number of other current and former EOP employees and contractors—must submit their works to RAISMD, even if they are no longer affiliated with the Government. This stands in stark contrast to the Office of Administration, which was held not to be an agency because it provides "operational and administrative support of the work of *the President and his EOP staff*." *CREW v. Ofc. of Admin.*, 559 F. Supp. 2d 9, 26-27 (D.D.C. 2008) (emphasis added) [hereinafter *CREW I*].

> For example, RAISMD is responsible for conducting prepublication review for NSC personnel. The Prepublication Classification Review Board (formerly known as the Publications Review Board) is responsible for conducting prepublication review for CIA personnel. The Defense Office of Prepublication and Security Review is responsible for conducting prepublication review for DOD personnel. The Office of Information Programs and Services is responsible for conducting prepublication review for State personnel. The Information Management Division is responsible for conducting prepublication review for ODNI personnel.

FAC ¶¶ 18-19. An office which performs a function shared by similar offices across the Executive Branch cannot be said to have the sole function of advising the President.

Similarly, to the extent that RAISMD implies that the fact is relevant that the President or some other NSC official might overrule an RAISMD decision, that is also true across the Executive Branch. For instance, as RAISMD noted below, "the President retains ultimate control over classified information." RAISMD's Dist. Mem. at 11. This means that the President can unilaterally classify or declassify a document over the objection of an original classification authority at CIA. Accepting RAISMD's argument would mean accepting that every office which makes classification and declassification decisions exists solely to advise the President, because "its role in securing classified information from unauthorized release is a key aspect of the [office's] 'quintessentially advisory' nature." *Id.* (quoting *Armstrong*, 90 F.3d at 561). There are certain areas of governance where

the President possesses ultimate authority, but the fact that he *can* overrule an

office's decision does not make that office "advisory."[5]

## III.    THE DISTRICT COURT ERRED BY NOT AUTHORIZING LIMITED DISCOVERY OR CONDUCTING A HEARING AS AN ALTERNATIVE TO DISMISSAL

As noted above, Legal Eagle admitted from the outset that RAISMD may be

able to demonstrate through admissible evidence that it lacks substantial

independent authority. That admission does not mean that Legal Eagle has failed to

plausibly allege that it does not. With that in mind, however, Legal Eagle proposed

that the District Court should have, if it was inclined to dismiss RAISMD from the

case, chosen to authorize limited discovery to ascertain the relevant facts and

support or refute the plausibility of Legal Eagle's claims, as Judge Kollar-Kotelly

did in *CREW I*. *CREW I*, 559 F. Supp. 2d at 11.

If the District Court had wished to order formal written discovery or

deposition testimony, Federal Rule of Civil Procedure ("FRCP") 26(b)(1) states:

"For good cause, the court may order discovery of any matter relevant to the

subject matter involved in the action." Fed. R. Civ. P 26(b)(1). If the District Court

---

[5] Additionally, the facts of the Bolton case demonstrate an additional level of independence on the part of RAISMD. While Bolton submitted his manuscript for review after he left Government service, a sitting National Security Advisor would have to do the same. In other words, RAISMD exercises the authority to prohibit the President's chief advisor on national security issues from publishing a written work without its express permission. That is not a level of authority which is subject to the approval of more senior officials.

had simply wished to allow examination of an RAISMD official, FRCP 12(i)

allows a Court to use a preliminary hearing "to determine jurisdictional as well as

other threshold issues." *Kregler v. City of N.Y.*, 608 F. Supp. 2d 465, 475

(S.D.N.Y. 2009). As explained in *Kregler*:

> [A]cknowledging that this case presents a close call, to minimize
> additional motion practice at this stage and avert potentially
> unnecessary extensive discovery, the Court proposes two steps
> intended to achieve the "amplication" of factual allegations by means
> of a "flesh[ing] out" procedure such as that suggested in *Iqbal*. 490
> F.3d at 158. First, the Court will exercise its discretion pursuant to
> Rule 12(i) to schedule a preliminary hearing at which the parties may
> present the testimony of live witnesses and other evidence limited to
> Defendants' objections to the pleadings, specifically the threshold
> legal issues upon which, under the *Twombly* and *Iqbal* plausibility
> test, the sufficiency of Kregler's . . . claim is grounded. . . . As regards
> matters involving factual issues that bear on the subject of the hearing
> the Court may consider affidavits, depositions or documents, or
> testimony presented orally.

*Id. See also Rivera-Gomez v. de Castro*, 900 F.2d 1, 2 (1st Cir. 1990) (noting that

Rule 12(i) "can be an excellent device for conserving time, expense, and scarce

judicial resources by targeting early resolution of threshold issues"). Such a

procedure would allow the undersigned to question an RAISMD official under

oath in the Court's presence, which would ideally adduce the information the Court

will need to make its ruling.

Regardless of which approach the District Court could have selected,

RAISMD's failure to proffer definitive evidence on the issue of its agency status,

coupled with the fact that the relevant evidence on this issue rests solely with the

Government, means that Legal Eagle should have been given the opportunity to obtain and adduce relevant evidence without imposing an onerous discovery burden on RAISMD. This is especially appropriate since the evidence sought would be limited to information about RAISMD's relevant authorities and practices vis-à-vis the NSC and the President, the rules governing its activities, the commonality (or lack thereof) of its decisions being subjected to additional review, and related issues.

Discovery on these topics could be accomplished in part through the use of interrogatories, document requests, and requests for admissions. In the final analysis, however, Legal Eagle should have been allowed, if necessary, to conduct targeted depositions of individuals who can speak to the actual authority and independence that RAISMD has wielded. Documents, while certainly probative, do not address sufficiently how RAISMD has actually acted. Indeed, it was the deposition testimony of senior NSC officials which led the courts in *Armstrong* and *CREW II* to conclude that the NSC and OA were not agencies. *Armstrong*, 90 F.3d at 561, 555-560; *CREW II*, 566 F.3d at 221. As these cases illustrate, it is necessary to consider not only the nature of the authority delegated to RAISMD, but how it has actually exercised that authority.

When the District Court ordered RAISMD to be dismissed from the case without any such discovery, that was a clear error. While Legal Eagle is not

separately appealing that determination, it cannot be said that the District Court's ultimate dismissal of RAISMD after failing to take such steps is worthy of summary affirmance.

Accordingly, even if this Court might reasonably affirm the District Court's decision on the merits, the controversy is too nuanced to decide on summary disposition.

<u>**CONCLUSION**</u>

For all of the foregoing reasons, the Court should deny RAISMD's Motion for Summary Affirmance.

Date: December 19, 2024

Respectfully submitted,

 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing filing contains 4919 words, and was prepared in 14-point Times New Roman font using Microsoft Word 365.

<u>/s/ Kelly B. McClanahan</u>
Kelly B. McClanahan, Esq.