No. 24-5230

# UNITED STATES COURT OF APPEALS
# DISTRICT OF COLUMBIA CIRCUIT

_____

LEGAL EAGLE, LLC,

*Plaintiff-Appellant*,

v.

NATIONAL SECURITY COUNCIL RECORDS ACCESS AND
INFORMATION SECURITY MANAGEMENT DIRECTORATE,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
No. 1:20-cv-01732-RC
(Rudolph Contreras, J.)

_____

## PETITION FOR *EN BANC* REHEARING
_____

Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD  20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff-Appellant*

## <u>CERTIFICATE AS TO PARTIES AND AMICI</u>

Pursuant to Circuit Rules 35(c) and 40, Appellant Legal Eagle, LLC, by and through undersigned counsel, certifies the following: The parties to this case are the Appellant and the Appellee National Security Council Records Access and Information Security Management Directorate.  No *amicus curiae* are currently involved in the case.

Appellant Legal Eagle, LLC ("Legal Eagle") hereby seeks *en banc* rehearing of this case after the Court's 30 January 2025 decision, which summarily affirmed the District Court's grant of summary judgment based entirely on the argument that any National Security Council ("NSC") component is exempt from the Freedom of Information Act ("FOIA") because this Court had held that the NSC was exempt from FOIA in *Armstrong v. Executive Office of the President*, 90 F.3d 553 (D.C. Cir. 1996).[1] (Order, Dkt. #2097665, at 1-2 (filed Jan. 30, 2025).) The Panel reached this decision despite ample evidence that the Records Access and Information Security Management Directorate ("RAISMD") exercised substantial independent authority and did not solely—or even primarily—serve to advise the President.

The District Court's action—and the Panel's affirmance—is likely to exacerbate and accelerate the recent trend of the Executive Branch attempting to insulate Government offices from accountability and transparency by placing them in the Executive Office of the President ("EOP"). As such, the Panel's decision will have widespread public impact which will affect more than just Legal Eagle and will create a significant tension with this Court's prevailing case law. This is an appropriate case, therefore, for *en banc* rehearing.

---

[1] Legal Eagle's conclusion that the Panel's interpretation of *Armstrong* was the deciding factor in its determination is based on the fact that the Panel's order was less than a page in length and only cited to *Armstrong* with no analysis.

# ARGUMENT

## I. THIS CASE IS OF EXCEPTIONAL IMPORTANCE AND *EN BANC* REVIEW IS NECESSARY TO MAINTAIN UNIFORMITY OF THIS COURT'S DECISIONS

This case warrants *en banc* rehearing due not only to the significant loophole that it has created in the law of agencies, but also because of the prospect of that loophole being relied upon for increasingly egregious abuses. To see the extent to which allowing this ruling to stand would pervert *Armstrong* and related cases to allow practically independent offices to exist without any accountability or transparency based on a President's whim, one need only consider the recent case of the U.S. DOGE Service.

On 20 January 2025, President Donald Trump issued Executive Order 14,158, entitled *Establishing and Implementing the President's "Department of Government Efficiency."* That Order stated that the existing U.S. Digital Service, which had been previously established as a component of the Office of Management and Budget ("OMB"), would be renamed the U.S. DOGE Service ("USDS") and given a new mission. Most relevantly for this case, this order also relocated USDS from OMB to the EOP. Exec. Order 14,158 § 3(a). All evidence points to the conclusion that the Government's reason for doing so was to remove USDS from the reach of FOIA and the Federal Records Act. *See*, *e.g.*, Jason Koebler & Joseph Cox, *DOGE Employees Ordered to Stop Using Slack While*

2

*Agency Transitions to a Records System Not Subject to FOIA*, 404 Media (Feb. 5, 2025), *at* https://www.404media.co/doge-employees-ordered-to-stop-using-slack-while-agency-transitions-to-a-records-system-not-subject-to-foia/ (last accessed Mar. 30, 2025).

In fact, the Acting USDS Administrator testified under oath that it was the Government's position that USDS's work was so important that it would actually be *harmed* if it were forced to comply with FOIA, demonstrating that exclusion from FOIA was a primary purpose and not an incidental by-product of the move:

> *Harm to USDS and the President if USDS is Required to Comply with the Court's Order*
>
> 28. If USDS is required to comply with the court's order, it will have to set up a new FOIA operation from scratch within USDS. Because USDS is an Executive Office of the President component that reports to the White House Chief of Staff and advises the President, it has adopted no FOIA regulations, hired no document processors or reviewers, and has no dedicated budget for these activities. *To complete all of these tasks will divert significant time and resources from an organization that is charged with advising the President and others on high-priority projects of this Administration.*
>
> 29. Because USDS is an Executive Office of the President component that reports to the White House Chief of Staff and advises the President, it works closely with other senior White House advisors on a regular basis. *A requirement that USDS produce records not only threatens to divert time and resources, but also risks chilling and inhibiting the exchange of information and advice among the President's advisors on Administration priorities.*

3

Decl. of Amy Gleason, Dkt. #20-2, ¶¶ 28-29 (filed Mar. 14, 2025), *Citizens for Resp. & Ethics in Wash. v. U.S. DOGE Serv.*, No. 25-511 (D.D.C.) (emphasis except heading added).[2]

    As it currently stands, courts have been so far unwilling to endorse the Government's position that USDS is not an agency, *see*, *e.g.*, *Am. Fed'n of State, County, & Municipal Emps., AFL-CIO v. SSA*, No. 25-596, 2025 U.S. Dist. LEXIS 50909, at *155-157 (D. Md. Mar. 20, 2025) (collecting cases), but according to the Panel's decision, all it would take to undo that would be an Executive Order moving USDS into the NSC, or Office of Administration, or any other EOP component which has previously been found to not be an agency. The Panel's decision effectively precludes any judicial consideration of the independent authority exercised by an entity in favor of a robotic adoption of this Court's previous finding that the parent organization was not an agency in a case where the particular entity's function was not even discussed.

    To be clear, while Legal Eagle would welcome a full *en banc* briefing and oral argument on the full merits of this case, that is not the only relief it is seeking. At the very least, Legal Eagle asks this Court to clarify the scope of *Armstrong* and

---

[2] Ms. Gleason's complaint that USDS would "have to set up a new FOIA operation from scratch within USDS" is particularly telling since, as an OMB component, the U.S. Digital Service *had* a FOIA operation. In other words, one of the first priorities for USDS upon being relocated was removing its FOIA capacity, demonstrating that it had been actively planning from the outset to exempt itself from FOIA.

hold *en banc* that an entity's mere placement in a non-agency EOP component does not automatically mean that *that entity* is also not an agency, and that a court must still consider *that entity's* degree of independent authority. This is the only way to harmonize the Panel's decision with *Armstrong* and related case law which requires a court to consider "whether the entity [actually] exercises substantial independent authority." *Armstrong v. Exec. Ofc. of the Pres.* 90 F.3d 553, 558 (D.C. Cir. 1996) (Tatel, J., dissenting). Once this Court clarifies this point, it would be appropriate for it to remand the case back to the Panel—if not the District Court—for a determination of whether Legal Eagle has demonstrated that RAISMD exercises substantial independent authority, *regardless of where it is housed*.

In anticipation of the argument that Legal Eagle is reading too much into the scope of the Panel's—and the District Court's—decision, and that those decisions only stand for the assertion that RAISMD *specifically* is not an agency under FOIA, that is not how the Government interprets that holding. The District Court's opinion was cited *eight months later* with the explanation, not that *RAISMD* was not subject to FOIA because it was part of the NSC, but that *any* component of the NSC was not subject to FOIA "because 'the National Security Adviser, working in close contact with and under the direct supervision of the President, controls the NSC staff.'" Defs.' Mem. Supp. Defs.' Renewed Mot. Dismiss in Part, Dkt. #20-1,

5

at 16 (filed Oct. 28, 2021), *Comp. Enter. Inst. v. McCarthy*, No. 21-1238 (D.D.C.) (quoting *Legal Eagle, LLC v. Nat'l Sec. Council Rec. Access & Info. Sec. Mgmt. Directorate*, No. 20-1732, 2021 U.S. Dist. LEXIS 50637, at *11 (Mar. 18, 2021)). Should this Court allow the Panel's decision to stand without comment, the District Court's decision will continue to be cited in this fashion (and identified as affirmed by this Court) until some court eventually adopts it. It is therefore paramount that this Court act to secure a role for judicial review in the face of Executive Branch attempts to avoid accountability and transparency.

## II.     THE PANEL'S HOLDINGS ARE AT ODDS WITH PRECEDENT

As noted above, the Panel's summary affirmance of the District Court's decision cannot be reconciled with this Court's controlling precedent without creating an exception which has the potential to swallow the rule, making this an appropriate case for *en banc* review. According to the District Court—and the Panel by extension—it does not matter what an office's sole function is or how much substantial independent authority it exerts as long as it is placed within an entity which has been found in the past to be excluded from FOIA due to its proximity to the President. And it does not matter if the case leading to that previous decision never discussed the particular office's functions or authorities. This exception eviscerates the entire functions-based metric established by this Court.

6

RAISMD's argument, summed up, is: "The text, analysis, logic, and context of the Court's decision in *Armstrong* all demonstrate that the Court's holding that the NSC is not subject to FOIA necessarily applies to all of the staff and sub-offices within the NSC." (Appellees' Mot. Summ. Aff., Dkt. #2088751, at 9 (filed Dec. 9, 2024) [hereinafter RAISMD's Mot.]) This argument is completely meritless, as was the prime example offered by RAISMD in its defense below: "Plaintiff's argument would be akin to arguing that this Court is not an agency subject to FOIA, but the Office of the Clerk of Court may be if it exercises 'substantial independent authority.' This, of course, is nonsense." Defs.' Mem. of Law Supp. Defs.' Part. Mot. Dismiss, Dkt. #9-1, at 8 (filed Aug. 3, 2020) [hereinafter RAISMD's Dist. Mem.]. Not so. A better analogy would be: "Plaintiff's argument would be akin to arguing that [the Executive Office of the President] is not an agency subject to FOIA, but the Office of [Management and Budget] may be if it exercises 'substantial independent authority.' This, of course, is [controlling precedent]."

RAISMD's argument hinges on a common fallacy: the fact that no court has issued a comparable holding before means that it is not valid. "We are aware of no instance where an office or sub-part within a non-FOIA entity has been treated as an agency subject to FOIA." *Id.* at 7-8. The simple fact is, there are only a negligible number of "non-FOIA entities" in the Executive Branch, and so the

likelihood of a court being presented with this question and then finding that an office or sub-part within a non-FOIA entity is subject to FOIA is statistically improbable, to say the least, given how fact-specific the inquiry must be. All but one of the "non-FOIA entities" in the Executive Branch of which the undersigned is aware exist within the EOP, and most of them exist within the White House Office.[3] Components of the White House Office have so far been held to be universally excluded from FOIA due to their close proximity to the President and lack of anything close to independent authority. *Meyer v. Bush*, 981 F.2d 1288, 1293 & n.3 (D.C. Cir. 1993) (treating all White House Office staffers as the President's "immediate personal staff").

The primary difference between the NSC and the White House Office—and therefore the inapposite nature of most of RAISMD's citations—can be best demonstrated by answering one question: Did the court analyze the functions of the offices in question? In *Meyer*, the D.C. Circuit explained that the President's "immediate personal staff" are exempted from FOIA "without a careful examination of [their] function." *Id.* at 1293 (internal quotation marks omitted); *see also id.* at 1310 ("We and the Supreme Court have . . . granted FOIA exemptions to persons or offices within the White House Office without applying the 'sole

---

[3] The exception to this general rule is the First Responder Network Authority, a Department of Commerce component which has been held to be exempt from FOIA. *Whitaker v. Dep't of Commerce*, 970 F.3d 200, at 206 (2d Cir. 2020).

function' test.") (Wald, J., dissenting). "In other words, entities within the White House Office are not agencies subject to FOIA regardless of how they function. The D.C. Circuit has repeatedly interpreted *Kissinger* to mean that entities within the White House Office are *categorically* not agencies for purposes of FOIA." *Democracy Forward Found. v. White House Ofc. of Am. Innovation*, 356 F. Supp. 3d 61, 66 (D.D.C. 2019) (emphasis added). These cases stand for the proposition that, if every component of an entity is so *categorically* not subject to FOIA that a court does not even need to *consider* its functions, then a court can dismiss any FOIA claim against it.

The NSC, however, is not so categorically not subject to FOIA that a court can dismiss a claim against its components "without applying the 'sole function' test." *Meyer*, 981 F.2d at 1310 (Wald, J., dissenting). Each time a court has adjudicated a FOIA case against the NSC, it has performed a searching "sole function" examination of the functions of the office. This inescapable fact removes any relevance of the case law cited by RAISMD. Instead, it is necessary to view the NSC cases in the proper context and assess the questions before the court in those cases. The Court need only examine the most recent case, *Main Street Legal Services v. National Security Council*, to understand this point.

In *Main Street Legal Services*, much like all the cases which came before, the plaintiff sought a holding that the *entire* NSC was an agency subject to FOIA

9

because *parts of it* exercised independent authority. *See* 811 F.3d 542 *passim* (2d Cir. 2016). As a result, the court's examination effectively boiled down to whether or not the NSC *as a whole* was subject to FOIA, and it concluded it was not, *notwithstanding* any apparent authority that a few components might exercise.[4] In effect, the court implicitly held that a few independent actions did not outweigh the overall fact that the NSC's sole function *in its entirety* was to advise the President. This is a legally distinct question from the instant case. Legal Eagle is not arguing that the NSC as a whole is subject to FOIA, and it would be inappropriate for the Court to engage in some sort of balancing test between RAISMD's independent authority and the solely advisory nature of the remainder of the NSC. Instead, the Court should consider if Legal Eagle has plausibly alleged that the majority—or entirety—of *RAISMD's* activities shows "whether an entity does more than render advice or assistance to the President—whether it exercises authority independent of the President, particularly with respect to individuals or other parts of government." *Main St. Legal Servs.*, 811 F.3d at 554.

---

[4] On this point, RAISMD mischaracterizes the *Armstrong* ruling as "*Armstrong* . . . necessarily concluded that none of the NSC's offices or staff were subject to FOIA." (RAISMD's Mot. at 13.) This Court did not rule that no part of NSC was an agency; it ruled that *the NSC* was not an agency notwithstanding what some of its parts might do, as the Second Circuit did in *Main Street Legal Services*. Moreover, to the extent that either Circuit held that the specific authorities cited by the plaintiffs were not independent, neither opinion mentioned RAISMD or prepublication review. This will be discussed in greater detail below.

*Armstrong* properly frames the question the Court should ask: "Insofar as the staff has been delegated authority to make policy recommendations for approval by the President, his NSA, or the statutory Council, the staff's functions are, of course, quintessentially advisory." 90 F.3d at 561. Put another way, the actions of an office are only quintessentially advisory to the extent that they constitute policy recommendations for approval by the President, his National Security Advisor, or the statutory Council. If, in contrast, an office exists inside the NSC which plays no role in making policy recommendations and which "exercises authority independent of the President, particularly with respect to individuals," *Main St. Legal Servs.*, 811 F.3d at 554, then it cannot be considered to be merely supporting the NSC in its advisory capacity, and the White House cannot exempt it from FOIA simply by placing it inside the NSC instead of making it a separate office. All evidence in the record suggests that RAISMD exercises the authority of a separate, non-NSC component, and it would be inappropriate for the Court to hold that its mere placement inside the NSC as opposed to elsewhere in the EOP made it exempt from FOIA.

Relatedly, *Armstrong* suffers from one additional major infirmity which should preclude this Court from blindly following it as controlling precedent: as noted above, the *Armstrong* Court was never presented with information about RAISMD or prepublication review. Even assuming *arguendo* that the Court *did*

11

intend to declare that the entirety of NSC existed solely to provide advice to the President, that declaration cannot reasonably be read to include sub-offices about which the Court had no knowledge. RAISMD *infers* that the Court intended to cover RAISMD when it was discussing "'the internal management of the information that the NSC generates in advising the President' and 'declassification reviews'" (RAISMD's Mot. at 11), but never offered this Court or the District Court any evidence that the NSC *even performed* its own prepublication review in 1996 or that an office like RAISMD was even *in existence* at the time to do so. Given the decentralized nature of prepublication review in the Executive Branch, it is equally likely that the creation of an internal NSC capacity for performing prepublication review post-dated *Armstrong*, and even if RAISMD was in existence at the time, there is no reason to believe that it exercised its current authorities. If the District Court had drawn these reasonable inferences in Legal Eagle's favor as it was required to do, it could not have reasonably concluded that Legal Eagle's allegations were implausible based on *Armstrong*.

Therefore, much in the way that new evidence serves as an exception to the general rule governing the scope of a mandate, *see In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (finding reconsideration of an appellate determination appropriate if there is a dramatic change in law, significant new evidence, or blatant error that would result in

serious injustice); *Invention Submission Corp. v. Dudas*, 413 F.3d 411, 414-15 (4th Cir. 2005) (same); *United States v. Bell*, 988 F.2d 247, 251 (1st Cir. 1993) (same), so here does the existence of significant new evidence diminish the controlling authority of *Armstrong*. Simply put, this Court cannot presume that the *Armstrong* Court intended for its ruling to apply to NSC sub-offices about which it knew or suspected nothing and which may not have even existed at the time. It is not difficult to imagine the mischief that such a decision would invite, if the White House is effectively told that it can remove *any office* from the scope of FOIA simply by placing it inside the NSC, regardless of the office's function or authority.

RAISMD's entire line of argument can be traced to a fundamental misunderstanding of the D.C. Circuit's decision in *Ryan v. Department of Justice*, which it expressed thusly below:

> *Ryan* held that under FOIA, "depending on its general nature and functions, a particular unit *is either an agency or it is not*. Once a unit is found to be an agency, this determination *will not vary according to its specific function*." *Ryan*, 617 F.2d at 788 (emphasis added). Like DOJ in *Ryan*, NSC as a whole "is either an agency or it is not." *Id.*

RAISMD's Dist. Mem. at 9 (quoting 617 F.2d 781, 788 (D.C. Cir. 1980)). There are three main issues with this reading of *Ryan*, though.

First. RAISMD conveniently terminated the first quoted sentence before its actual end in a very misleading way, obscuring its actual meaning. *Ryan* held,

13

"Once a unit is found to be an agency, this determination will not vary according to its specific function *in each individual case*." 617 F.2d at 788 (emphasis added). The argument before this Court was whether records created by the Attorney General while performing one function—recommending judicial nominees to the President—could be considered "not agency records" even when the records he created while performing other functions would be considered agency records. *See, e.g.*, *id.* ("Neither *Soucie v. David*, nor the Committee Report implies that once a unit has been found to be an agency, one of its component parts can nevertheless be treated as a non-agency when engaged in presidential advisory functions."). This Court reasoned that agency status depended on the characteristics of *the agency*, not the characteristics of *any particular record*. That is not in controversy in this case. Furthermore, *Ryan* was first and foremost an opinion about whether particular records were "agency records," not whether the Attorney General was *an agency*. The Department of Justice ("DOJ") never argued that the Attorney General *was never an agency*; it only argued that the records created by the Attorney General were not agency records if he created them for a specific purpose. That is the meaning of the statement that a particular office "is either an agency or it is not," *id.*; its agency status does not change depending on the records being requested.

14

This context renders RAISMD's argument that "[l]ike DOJ in *Ryan*, NSC as a whole 'is either an agency or it is not,'" RAISMD's Dist. Mem. at 9, completely meaningless. In *Ryan*, this Court was not confronted with allegations that a component of an otherwise exempt entity should be considered an agency under FOIA *all the time*, or even that a component of an agency subject to FOIA should be considered *exempt* all the time. In fact, under RAISMD's reading, the aforementioned *Whitaker v. Department of Commerce*—in which the Second Circuit held that the First Responder Network Authority was not subject to FOIA even though its parent agency was, 970 F.3d at 206—was wrongly decided. If the President signs a new Executive Order placing the USDS within the NSC, without changing any of the functions or authorities of that office, USDS would still be an agency subject to FOIA regardless of its location within the NSC. So too for RAISMD; whether it is an agency or not depends solely on whether *it* "exercises authority independent of the President, particularly with respect to individuals," *Main St. Legal Servs.*, 811 F.3d at 554, not where it happens to be located.

On that point, Legal Eagle will not reiterate herein the evidence it provided to the District Court and the Panel demonstrating that RAISMD exercised substantial independent authority, at least as far as a motion to dismiss was concerned, and it will simply direct the Court's attention to its previous discussion of that evidence and why discovery or a hearing was warranted before dismissal.

15

(Appellant's Opp'n Appellee's Mot. Summ. Aff., Dkt. #2090633, at 12-20 (filed Dec. 19, 2024).) This Court should accordingly order *en banc* rehearing of this case so that the Panel's reflexive grant of summary affirmance does not provide the Executive Branch with "one weird trick" to avoiding accountability and transparency.

## CONCLUSION

For the foregoing reasons, the Court should reconsider this case *en banc*.

Date:  April 1, 2025

Respectfully submitted,

 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD  20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing filing contains 3900 words, and was

prepared in 14-point Times New Roman font using Microsoft Word 365.

<u>    /s/ Kelly B. McClanahan    </u>
Kelly B. McClanahan, Esq.

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 1st day of April, 2025, I filed the foregoing with the Court's Electronic Case Filing system, causing a copy to be served via electronic mail on Appellee's counsel of record.

Date: April 1, 2025

Respectfully submitted,

  /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD  20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Appellant*

No. 24-5230

## UNITED STATES COURT OF APPEALS
## DISTRICT OF COLUMBIA CIRCUIT

_____

LEGAL EAGLE, LLC,

*Plaintiff-Appellant*,

v.

NATIONAL SECURITY COUNCIL RECORDS ACCESS AND
INFORMATION SECURITY MANAGEMENT DIRECTORATE,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
No. 1:20-cv-01732-RC
(Rudolph Contreras, J.)

_____

## ADDENDUM

_____

Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD  20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff-Appellant*

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 24-5230**                                        **September Term, 2024**

**1:20-cv-01732-RC**

**Filed On:** January 30, 2025

Legal Eagle, LLC,

            Appellant

     v.

National Security Council Records Access
and Information Security Management
Directorate, et al.,

            Appellees


      **BEFORE:**   Millett, Wilkins, and Rao, Circuit Judges

## O R D E R

Upon consideration of the motion to expedite, the opposition thereto, and the waiver of reply; and the motion for summary affirmance, the opposition thereto, and the reply, it is

**ORDERED** that the motion for summary affirmance be granted. The merits of the parties' positions are so clear as to warrant summary action. See Taxpayers Watchdog, Inc. v. Stanley, 819 F.2d 294, 297 (D.C. Cir. 1987) (per curiam). Appellant does not challenge this court's holding that the National Security Council as a whole does not exercise substantial authority independent of the President and thus is not an agency subject to the Freedom of Information Act ("FOIA"). See Armstrong v. Executive Office of the President, 90 F.3d 553, 557-67 (D.C. Cir. 1996); see also id. at 556 n.* (explaining that the court used the term "NSC" to refer to either "the staff that supports" the Council itself, which is composed of the President and cabinet-level officials, or "the entire organization, including both the Council and the staff"). Appellant has not shown that the district court erred in concluding that the National Security Council Records Access and Information Security Management Directorate, which is a subpart of the National Security Council, is thus also not subject to FOIA. It is

**FURTHER ORDERED** that the motion to expedite be dismissed as moot.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 24-5230**                                                    **September Term, 2024**

of any timely petition for rehearing or petition for rehearing en banc.  <u>See</u> Fed. R. App.
P. 41(b); D.C. Cir. Rule 41.

**<u>Per Curiam</u>**